```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

MICHAEL ALAN CROOKER,         )
    Plaintiff,                )
                              )
         v.                   )
                              ) CIVIL ACTION NOS. 06-30187-PBS
                              )                   06-30213-PBS
PATRICK BURNS, NORMAN SHINK,  )                   06-30214-PBS
BYRON DAILEY, STEPHEN SWANSON,)                   06-30007-PBS
JANE HEFFNER, EDWARD CRONIN,  )                   06-30008-PBS
SEAN CONDON, ONIFFRIO MINAFO, )                   06-30065-PBS
    Defendants.               )                   06-30068-PBS
                                                  06-30077-PBS
```

MEMORANDUM AND ORDER
September 21, 2010

SARIS, D.J.

## I.   INTRODUCTION

On April 10, 2008, United States District Judge Michael A. Ponsor issued a Memorandum and Order regarding Magistrate Judge Neiman's Report and Recommendation for Summary Dismissal Pursuant to 28 U.S.C. § 1915A.  Judge Ponsor stayed the eight above-captioned civil rights cases pending disposition of the criminal charges against plaintiff Michael A. Crooker ("Crooker") in the case, United States of America v. Michael A. Crooker, CR 07-30038-MAP.  These cases involve claims against agents who executed one or more search or seizure warrants during the investigation of Crooker's criminal case.  Judge Ponsor directed that if Crooker desired to pursue one or more of these cases after disposition of the criminal charges, he must file a written request to lift the stay within 30 days after disposition of the

1

criminal case or within 30 days after completion of the appellate process.

About two years later, on January 14, 2010, Judge Ponsor entered a Procedural Order of Dismissal with respect to the above-captioned cases.  These cases were dismissed without prejudice to any party moving to restore them to the docket upon the completion of criminal proceedings in <u>United States of America v. Michael A. Crooker</u>, CR 04-30034-MAP (now CR 04-3004-PBS).  No time frame was set forth in the Procedural Order.

Crooker appealed his criminal conviction.  On June 18, 2010, the United States Court of Appeals for the First Circuit ("First Circuit") reversed the District Court and remanded Crooker's criminal case for the entry of a Judgment of Acquittal, based on the holding that the silencer at issue did not qualify as a "firearm" within the meaning of the statutory definition of 18 U.S.C. §§ 921(a)(3)(c) and 924.  <u>See</u> <u>United States v. Crooker</u>, 608 F.3d 94 (1st Cir. 2010).  Mandate issued on August 12, 2010 (Docket No. 263 in CR 04-30034-MAP).

On September 9, 2010, Judge Ponsor entered a Judgment of Acquittal (Docket No. 264), as well as an Order of Recusal (Docket No. 265) with respect to further involvement in any proceedings related to the criminal case.

After the First Circuit's Order and before the Judgment of Acquittal entered on August 11, 2010, Crooker filed a Motion to

Lift the Stay in each of the above-captioned cases.  Crooker argued that in light of the First Circuit's ruling, the favorable termination rule of Heck v. Humphrey, 512 U.S. 477 (1994) was no longer applicable to his civil rights cases against federal agents and the United States, and thus these actions should be reopened at this time, and permitted to proceed.

Thereafter, the federal defendants filed Oppositions to Crooker's motions to stay, contending that the civil cases have not ripened yet because there remains another criminal case pending against Crooker, United States v. Crooker, CR 07-30038-DPW (reassigned from Judge Ponsor to Judge Woodlock).  Defendants argue that the items seized by the agents gave rise to indictments in both United States v. Crooker, CR 04-30034-MAP and United States v. Crooker, CR 07-30038-DPW.  Defendants claim the criminal case before Judge Woodlock is likely to address search and seizure issues raised in Crooker's civil actions.  Defendants further note in support of this position that this Court referenced both the 2004 criminal case and the 2007 criminal case in the initial decision to issue the Stays in the civil cases.

On August 27, 2010, Crooker filed in each of the eight cases, a Motion for Leave to File a Reply Brief, along with an incorporated Reply Brief.  Crooker contends that his cases stem from claims of retaliation, alleging governmental misconduct as a means to block his lawsuits.  He argues that it would be

3

unreasonable and prejudicial to permit a substantial delay by denying him the ability to prosecute his civil rights cases until after completion of his second criminal case.

## II.  DISCUSSION

A.   <u>Crooker's Motions to File a Reply Brief</u>

Crooker's Motions for Leave to File a Reply Brief are <u>ALLOWED</u> and are considered with respect to each of the eight civil cases.

B.   <u>Crooker's Motions to Lift the Stay</u>

Essentially, Crooker argues that there is no longer a need to stay these eight civil actions in light of the Judgment of Acquittal in <u>United States v. Crooker</u>, CR 04-30034-MAP.  The defendants argue that the Stay should remain in place pending completion of Crooker's second criminal case, <u>United States v. Crooker</u>, CR 07-30038-DPW.  Crooker counters that his civil rights claims will not impact any future conviction in connection with his second criminal case and therefore undue prejudice would result in a continued stay.

This Court has previously evaluated whether Crooker's eight cases implicate principles espoused in <u>Heck</u> and <u>Wallace v. Kato</u>, 549 U.S. 384 (2007) insofar as Crooker is a pretrial detainee (and not a convicted prisoner).  Judge Ponsor stated:

> Recognizing that, in general, the <u>Heck</u> analysis must find its roots in the specifics of the Fourth Amendment claim, the court in approaching the eight complaints

> here must confront serious practical problems.  An item-by-item comparison of the 2799 counts of the Swanson complaint, for example, with the evidence offered at Plaintiff's criminal trial would, as Judge Neiman noted, constitute "an extreme waste of judicial resources." (Report and Recommendation at 9.)  And since the issuance of the Report and Recommendation, the context of the court's analysis has been further complicated by the new indictment issued against Plaintiff.  **This development raises the possibility that a determination during any civil trial of the propriety of the searches might not only imply the invalidity of Crooker's past conviction but also become entwined with issues related to his pending criminal charges and future trial as well.... This disposition will permit the full development of a record regarding the criminal proceedings so the court may better judge the relevance of the seizures challenged by Plaintiff and rule consistently on any constitutional issues.  Though it is conceivable that some of the allegedly improper seizures involved items irrelevant to both Crooker's outstanding criminal conviction and the pending charges, and thus escape the <u>Heck</u> bar, conservation of judicial resources dictates a single determination as to the applicability of <u>Heck</u> at the conclusion of <u>all</u> criminal proceedings**.

<u>Crooker v. Burns</u>, 544 F. Supp. 2d 59, 64-65 (D. Mass. 2008)(emphasis in bold and underscore added).

In light of Judge Ponsor's considered evaluation of the <u>Heck/Wallace</u> issues, this Court need not revisit the question whether Crooker's cases will impact a future conviction and/or whether his cases relate to retaliation and other matters outside the realm of <u>Heck</u> and <u>Wallace</u>.  In short, the Court rejects Crooker's arguments in support of his request to lift the stay in these eight cases notwithstanding the Judgment of Acquittal in

United States v. Crooker, CR 04-30034-MAP.  Principles of abstention, and the inherent authority of the Court to manage its cases and ensure the proper use of judicial resources, dictate that Judge Ponsor's Procedural Order of Dismissal should remain in place.

Accordingly, the Court **DENIES** Crooker's Motions to Lift the Stay (and to re-open) in each of these cases.

C.   Issues Regarding Malicious Civil Actions

Notwithstanding these cases will remain stayed/administratively closed, this Court notes that the Report and Recommendation issued by (then) Chief Magistrate Judge Neiman raised concerns with respect to Crooker's practice of initially filing these cases in the state courts, as a means to avoid his filing fee obligations in this Court, and as a way to circumvent the three-strikes rule of the Prison Litigation Reform Act.  See 28 U.S.C. § 1915(g)(three strikes rule providing that a prisoner who has had, on three or more occasions, a civil action or appeal dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted, is ineligible for *in forma pauperis* status unless he is in imminent danger of serious bodily harm).

Specifically, Magistrate Judge Neiman stated in his Report and Recommendation:

Finally, the court is compelled to register its concern for what appears to be a disturbing litigation strategy on Plaintiff's part.  While none of Plaintiff's actions to date lead the court to suggest *sua sponte* dismissal on grounds of *maliciousness* or *frivolousness*, see 28 U.S.C. § 1915A(b)(1), three aspects of Plaintiff's efforts are particularly troublesome.  First, the record suggests that Plaintiff brought these lawsuits in state court solely to put the Government to the burden of removing them to federal court.  If true, Plaintiff's ulterior motives raise significant concerns.  *Cf. Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002)(noting that a civil action will be deemed "clearly vexatious or brought primarily for purposes of harassment when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant")(citation and internal quotation marks omitted).  Second, by initiating at least ten individual lawsuits in state court, knowing they would have to be removed by the Government, Plaintiff has successfully evaded the $350 filing fee for each case (approximately $3,500 total).  To be sure, it appears that Plaintiff filed Affidavits of Indigency and Requests for Waiver in state court, thereby allowing him to file there at no cost. (See, e.g., *Heffner* Document No. 4, Exhibit.)  As Plaintiff is no doubt aware, however, he is a likely federal "three strikes" candidate under 28 U.S.C. § 1915(g) (conceivably having had three or more civil actions since April of 1996 dismissed on the merits), and, therefore, potentially ineligible for *in forma pauperis* status here.  Third, by bringing his lawsuits in state court, Plaintiff appears to have successfully sidestepped the preliminary screening mechanism of 28 U.S.C. § 1915, another provision of the PLRA which allows for dismissal of *in forma pauperis* complaints that are "frivolous" or "malicious."  28 U.S.C. § 1915(e)(2)(B). Of course, as indicated earlier in this report and recommendation, the Government's removal does not prevent the court from screening Plaintiff's complaints under section 1915A. Still, by filing in state court, summonses have issued without section 1915 screening.  In summary, Plaintiff's maneuvering and apparent evasions have heightened the court's suspicion of these proceedings.

Crooker v. Burns, C.A. 03-30187-MAP (Memorandum and Order (Docket No. 20 at 8-11), entered Aug. 15, 2007).

In a footnote in that Report and Recommendation, Magistrate Judge Neiman noted that evidence of Crooker's knowledge that the government would remove his state cases to federal court was found in a letter by Crooker to government counsel stating:

> "You ought to consider globally settling these many Fourth Amendment cases under the FTCA, if just to conserve government resources.... As you know, I am relentless and we will be in litigation for many years as we have been in the past.  There are no shortage of defendants who trampled my abode and **I can envision 50 more lawsuits in the pipeline, all of which you will have to individually remove to Federal Court**."

Id. at 10 n.4 (emphasis in bold added).

Since the filing of these civil actions, Senior Judge Harrington reviewed Crooker's litigation history and independently determined that Crooker indeed is a three-strikes litigant under 28 U.S.C. § 1915(g), making him ineligible to proceed *in forma pauperis* in non-habeas civil actions.  He also found that Crooker's filing practices (*i.e.*, filing civil actions in state court which were later removed to federal court) were done in order circumvent this three-strikes rule.  See Crooker v. Merchants CR Guide Company, C.A. 08-10382-EFH (Memorandum and Order Docket No. 5).  Judge Harrington then directed that in any removed action, Crooker must pay the removal fee or demonstrate good cause why he should be permitted to proceed without payment

8

of the removal fee.  Judge Woodlock has followed suit in adopting Judge Harrington's approach.  See <u>Crooker v. First Data Solutions, LLC</u>, C.A. 08-12145-DPW; <u>Crooker v. National Enterprise System</u>, C.A. 08-11167-DPW.

In <u>Crooker v. Burns</u>, Judge Ponsor also expressed concern regarding Crooker's pleading practices, and stated that:

> **Upon the expiration of the stays in this case, the government will be free to press its argument that Plaintiff's suits should be dismissed as frivolous and malicious.** (Dkt. No. 24, Resp. to Pl.'s Objection to Report and Recommendation for Summ. Dismissal 1-2.) The court, at that time, will weigh the persuasiveness of Judge Harrington's decision on this issue.  In the meantime, Judge Harrington's order will prohibit the filing of any further federal civil suits by Plaintiff, or their removal to federal court from state court, without the payment of the full filing fee.

<u>Crooker v. Burns</u>, 544 F. Supp. 2d at 65 (emphasis in bold added).

Here, the federal defendants failed to assert a frivolousness or maliciousness argument in their Oppositions to Crooker's Motions to Lift the Stay, instead relying on <u>Heck/Wallace</u> considerations.

In view of the recent reassignment of these eight cases warranting a review of the records of Crooker's criminal and civil cases, this Court finds that a further Order is warranted with respect to this pleading practice issue.  Accordingly, this Court will require that, in conjunction with any renewed Motion to Lift the Stay, Crooker also shall demonstrate good cause why

his eight cases should not be dismissed with prejudice as a sanction for bad faith filing/pleading practices in an attempt to circumvent application of § 1915(g).[1]

Specifically, Crooker shall address the question of why this Court should not consider his statement in his letter to government counsel that "[t]here are no shortage of defendants who trampled my abode and I can envision 50 more lawsuits in the pipeline, all of which you will have to individually remove to Federal Court" as probative evidence of Crooker's lack of a *bona fide* intent to prosecute his eight civil actions at the time he filed those actions in the state courts, and as evidence of a manipulative attempt to circumvent the requirements of the Prison Litigation Reform Act with respect to civil action filing fees owed by prisoners under 28 U.S.C. § 1915(b).

In briefing this issue, Crooker shall not assert the merits of his civil rights claims regarding the alleged unconstitutional actions by federal agents, but should focus solely on the question whether or not this Court should consider his filing of these eight civil cases in state court as malicious and bad faith

---

[1] As a practical matter, Crooker could not have proceeded with his civil actions in federal court because he lacked sufficient funds to pay the Court's filing fees up-front (*i.e.*, at the time of filing his Complaints rather than in installment payments under the *in forma pauperis* statute).

10

pleading practices warranting the imposition of severe sanctions.

Nothing in this Memorandum and Order prohibits any defendant from raising these issues at a future date.

### III. CONCLUSION AND ORDER

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motions to File a Reply Brief filed in Civil Action Nos. 06-30187-PBS; 06-30213-PBS; 06-30214-PBS; 06-30007-PBS; 06-30008-PBS; 06-30065-PBS; 06-30068-PBS; and 06-30077-PBS are ALLOWED;

2. Plaintiff's Motions to Lift Stay, filed in Civil Action Nos. 06-30187-PBS; 06-30213-PBS; 06-30214-PBS; 06-30007-PBS; 06-30008-PBS; 06-30065-PBS; 06-30068-PBS; and 06-30077-PBS are DENIED; These actions shall remain administratively closed on the dockets of the Court.

3. Any renewed Motions to Lift Stay filed by plaintiff shall be accompanied by a brief showing good cause why his eight cases should not be dismissed as a sanction for malicious pleading practices in order to circumvent the three-strikes rule of 28 U.S.C. § 1915(g).[2]

SO ORDERED.

/s/ Patti B. Saris
UNITED STATES DISTRICT JUDGE

---

[2] Should Crooker seek to appeal the rulings in this Memorandum and Order, he is advised that this Court will not grant leave to proceed on appeal *in forma pauperis* because he is a three-strikes litigant under 28 U.S.C. § 1915(g). Should such a motion be filed, it will be denied, and Crooker may seek review in accordance with Fed. R. App. P. 24 (appealing *in forma pauperis*).