UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL ALAN CROOKER,
Plaintiff,

v.

PATRICK BURNS, NORMAN SHINK, BYRON DAILEY, STEPHEN SWANSON, JANE HEFFNER, EDWARD CRONIN, SEAN CONDON, ONIFFRIO MINAFO,
Defendants.

CIVIL ACTION NOS. 06-30187-PBS
06-30213-PBS
06-30214-PBS
07-30007-PBS
07-30008-PBS
07-30065-PBS
07-30068-PBS
07-30077-PBS

MEMORANDUM AND ORDER
November 20, 2010

SARIS, D.J.

## I. INTRODUCTION

On September 21, 2010, this Court issued a Memorandum and Order (Docket No. 36) denying Plaintiff Michael A. Crooker's ("Crooker") Motions to Lift the Stay/Motions to Reopen each of the above-captioned civil rights cases.[1] Crooker argued that in light of the Judgment of Acquittal in United States of America v. Michael A. Crooker, CR 07-30038-MAP, the favorable termination rule of Heck v. Humphrey, 512 U.S. 477 (1994) was no longer applicable to his civil rights cases against federal agents and

[1]On April 10, 2008, Judge Ponsor stayed (and later administratively closed) these eight civil rights cases pending disposition of Crooker's criminal case. These cases involve claims against federal agents who executed one or more search or seizure warrants during the investigation of Crooker's criminal case.

the United States, and thus these actions should be reopened and permitted to proceed. The federal defendants opposed Crooker's motions on the grounds that his civil cases have not ripened yet because there remains another criminal case pending against Crooker, United States v. Crooker, CR 07-30038-DPW. Defendants claimed that items seized by the agents gave rise to indictments in both United States v. Crooker, CR 04-30034-MAP and United States v. Crooker, CR 07-30038-DPW, and that the criminal case before Judge Woodlock is likely to address search and seizure issues raised in these civil actions.

In the Memorandum and Order, this Court agreed with the defendants, denying Crooker's motions to reopen these actions based on principles of abstention and the inherent authority of the Court to manage its cases and ensure proper use of judicial resources. Thus, these eight cases remain administratively closed.

Additionally, in the Memorandum and Order, this Court recognized the concern expressed by Magistrate Judge Neiman in his Report and Recommendation in Crooker v. Burns, C.A. 03-30187-MAP (Memorandum and Order (Docket No. 20 at 8-11), entered Aug. 15, 2007) regarding Crooker's pleading practice of filing civil cases in state court in order to circumvent the Prison Litigation Reform Act's three-strike rule, embodied in 28 U.S.C. § 1915(g)(making Crooker ineligible to proceed in federal

court *in forma pauperis*). The Court also noted Judge Ponsor's concern in this regard, and his ruling that upon expiration of the stays, the government was free to press an argument that Crooker's lawsuits should be dismissed as frivolous and malicious.

In light of the recent reassignment of these eight cases warranting a review of the records, and in light of the concerns of various judicial officers, this Court Ordered, in relevant part, that:

> [I]n conjunction with any renewed Motion to Lift the Stay, Crooker also shall demonstrate good cause why his eight cases should not be dismissed with prejudice as a sanction for bad faith filing/pleading practices in an attempt to circumvent application of § 1915(g). Specifically, Crooker shall address the question of why this Court should not consider his statement in his letter to government counsel that "[t]here are no shortage of defendants who trampled my abode and I can envision 50 more lawsuits in the pipeline, all of which you will have to individually remove to Federal Court" as probative evidence of Crooker's lack of a *bona fide* intent to prosecute his eight civil actions at the time he filed those actions in the state courts, and as evidence of a manipulative attempt to circumvent the requirements of the Prison Litigation Reform Act with respect to civil action filing fees owed by prisoners under 28 U.S.C. § 1915(b). In briefing this issue, Crooker shall not assert the merits of his civil rights claims regarding the alleged unconstitutional actions by federal agents, but should focus solely on the question whether or not this Court should consider his filing of these eight civil cases in state court as malicious and bad faith pleading practices warranting the imposition of severe sanctions. Nothing in this Memorandum and Order prohibits any defendant from raising these issues at a future date.

Memorandum and Order (Docket No. 36) at 9-11 (emphasis added).

Thereafter, on October 21, 2010, in response to the Memorandum and Order, Crooker filed a Brief in Opposition to Proposed Sanctions For Malicious Pleading Practices (Docket No. 38). In his Brief in Opposition, Crooker makes a number of arguments to show that his pleading practices are not malicious. He asserts that this Court should not impose sanctions of dismissal of his civil rights cases simply because he was "clever" enough to devise a litigation strategy of filing in state court. He claims he read about this strategy in a Columbia Human Rights Law Review that recommended that "whenever possible the federal courts should be avoided and the more inmate-friendly state courts should be used." Brief in Opposition (Docket No. 38 at 1). Crooker points out that state courts do not force indigent inmates to pay filing fees, as required under the Prison Litigation Reform Act ("PLRA") with respect to federal court litigation. He also contends that the PLRA does not make a distinction between convicted prisoners and pretrial detainees, who are entitled to more rights than prisoners.

Moreover, Crooker claims that his filing tactic is legal and ethical, and that there is no case law that prohibits this practice. Further, he asserts that Judge Harrington's injunction (providing that Crooker must pay the removal fee in any removed

action or show cause why his action should not be dismissed as a sanction for improper pleading practices) is unreported, and should not be applied by this Court retroactively.

Crooker then argues that "Judges just seem to hate it when people like Crooker find loopholes absolutely legal to sue and so they engage in what the lawyers call "intellectual dishonesty" and what Crooker calls "corruption." Id. at 2. As an example, he asserts that in connection with his criminal firearms case, "a federal judge raped the English language" in order to frame him in retaliation for his legal activism. Id.

Next, Crooker argues that he is not a malicious filer, and that over 150 of his civil cases (out of the 708 cases he lists as an attachment to his brief) have been meritorious or have settled. He concedes that his a three-strike litigant, and states that "because of these circumstances [he] is barred from the federal courts. It is that simple. [He] thus has no choice but to use the state courts." Id. In light of this, he argues that this Court should not look for ways to use "hypertechnicalities (that are perfectly legal)" against him. Id. He asserts that the state courts are well-equipped to handle federal claims, and that he would rather have his cases handled in state court because he has a better chance of winning than he does in the "corrupt federal courts." Id. at 5. He claims he

wants nothing to do with federal district courts, and thus it is wrong to blame him for his cases that wind up in federal court because they are removed by defendants.

Finally, in addressing the issue of the letter that he sent to defense counsel (in which Crooker stated "[t]here are no shortage of defendants who trampled my abode and I can envision 50 more lawsuits in the pipeline, all of which you will have to individually remove to Federal Court"), Crooker contends that he has a right to send settlement letters. He submits that lawyers send threatening settlement letters, that this is the norm, but when a *pro se* does it, it appears to be "'extortion' or evidence of something nefarious." Id. at 4. He claims that his attempt to "bulldoze a settlement" is proper and this Court should not view the letter as anything but an attempt to settle.

**II. DISCUSSION**

Crooker's Brief in Opposition is premature. This Court directed that, in conjunction with any renewed motions to lift the Stays(or reopen his cases), Crooker demonstrate good cause why his eight cases should not be dismissed as a sanction. At this juncture, Crooker has not filed any renewed motions to lift the stays, and his criminal case before Judge Woodlock is still pending. Therefore, this Court need not take any action at this time in connection with Crooker's filing.

If and/or when Crooker's criminal case is completed and he seeks to reinstate his eight cases, he may file a renewed Brief in Opposition, and the defendants shall file a Response within 14 days thereafter, or they may seek to conduct discovery on this issue if necessary.

## III. CONCLUSION

Based on the foregoing, Crooker's Brief in Opposition to the Imposition of Sanctions (Docket No. 38) is PREMATURE, and this Court will take no action in this matter at this time. Crooker may submit a brief in opposition to the imposition of sanctions if and/or when he files renewed motions to reinstate his eight civil cases after completion of his pending criminal case. The defendants shall file a response 14 days after any renewed filing by Crooker.

SO ORDERED.

/s/ Patti B. Saris
UNITED STATES DISTRICT JUDGE